IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-CT-3238-FL

QUENTIN FREEMAN,                    )
                                   )
                  Plaintiff,        )
                                   )
        v.                          )                    ORDER
                                   )
TRAVIS COLEY,                       )
                                   )
                  Defendant.        )

This matter is before the court on defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, (DE 25). Plaintiff responded in opposition and in this posture the issues raised are ripe for ruling. For the reasons that the follow, the court grants the motion.

## STATEMENT OF THE CASE

Plaintiff, a state inmate proceeding pro se, commenced this action by filing complaint on October 12, 2017, asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendant Travis Coley ("defendant"), a correctional officer at the Maury Correctional Institution ("Maury C.I."), used excessive force against him in violation of the Eighth Amendment to the United States Constitution. As relief, plaintiff seeks compensatory and punitive damages.

On May 22, 2018, the court conducted its frivolity review of plaintiff's complaint pursuant to 28 U.S.C. § 1915(e), and allowed the action to proceed. On October 3, 2018, the court entered case management order governing discovery and dispositive motions practice, and also appointed North Carolina Prisoner Legal Services, Inc. ("NCPLS") to represent plaintiff for the discovery

phase of the case. The parties completed discovery on or about April 4, 2019. That same day, NCPLS withdrew from its limited appointment under Standing Order 17-SO-3.

On May 6, 2019, defendant filed the instant motion for summary judgment, arguing the record evidence establishes he did not use excessive force against plaintiff. In support, defendant relies upon memorandum of law, statement of material facts, and the following: 1) affidavit of Lamont Howell, a correctional captain at the Maury C.I.; 2) North Carolina Department of Public Safety ("DPS") use of force policy; 3) video footage taken of the use of force incident; 4) DPS incident report concerning the incident; 5) affidavit of William Wheeler, a correctional lieutenant at the Maury C.I.; 6) affidavit of Kevin Hudson, a correctional captain at the Maury C.I.; and 7) affidavit of defendant.

On May 20, 2019, plaintiff moved for appointment of counsel and extension of time to respond to the instant motion. On June 7, 2019, the court denied plaintiff's motion to appoint counsel and granted the motion for extension of time.

Plaintiff responded in opposition to the instant motion for summary judgment on July 16, 2019. In support, plaintiff relies upon memorandum of law, plaintiff's declaration, and the following: 1) photographs taken of the use of force incident; 2) witness statements and an incident report; 3) disciplinary investigation report; 4) plaintiff's administrative grievances; and 5) video footage of the incident.

## STATEMENT OF THE FACTS

The facts, viewed in the light most favorable to plaintiff, may be summarized as follows. On August 13, 2017, an evacuation order was issued for the gray unit of the Maury C.I., due to a fire. (Howell Aff. (DE 32-1) ¶¶ 3, 14). Defendant was among the correctional officers assigned

2

to escort inmates to safety. (Coley Aff. (DE 32-7) ¶ 7). As the officers escorted plaintiff out of his "pod," plaintiff slipped his left hand out of his wrist restraints. (Howell Aff. (DE 32-1) ¶ 16; Coley Aff. (DE 32-7) ¶ 8; Plaintiff's SOMF (DE 40) ¶ 6). Corrections officers ordered plaintiff to turn around and submit to reapplication of the wrist restraints. (Howell Aff. (DE 32-1) ¶¶16, 18; Pl.'s SOMF (DE 40) ¶¶ 7-8). Plaintiff initially refused the officers' instruction but eventually relented, and the wrist restraints were reapplied. (Howell Aff. (DE 32-1) ¶¶16, 18-19; Pl.'s SOMF (DE 40) ¶¶ 7-8).

After the wrist restraints were reapplied, officer William Wheeler ("Wheeler") began escorting plaintiff to the gray unit holding cells. (Wheeler Aff. (DE 32-5) ¶ 13). During the escort, Wheeler perceived plaintiff's body language and tone of voice was aggressive. (Id. ¶ 14; Pl.'s SOMF (DE 40) ¶ 13). Plaintiff admits that he was behaving aggressively during the escort, and the video footage confirms same. (Pl.'s SOMF (DE 40) ¶¶ 13-14; Howell Aff. Ex. B (DE 32-3)).[1]

Officer Kevin Hudson ("Hudson") and defendant took over control of plaintiff from Wheeler and resumed the escort to the holding cell. (Hudson Aff. (DE 32-6) ¶ 10; Coley Aff. (DE 32-7) ¶ 9). As they approached the holding cell, plaintiff admits that he was acting aggressively and started pulling away from defendant and Hudson. (Hudson Aff. (DE 32-6) ¶ 11; Coley Aff. (DE 32-7) ¶ 7; Pl.'s SOMF (DE 40) ¶ 17). Defendant ordered plaintiff to stop resisting and calm down so he could be placed in the holding cell, but plaintiff refused. (Howell Aff. (DE 32-1) ¶ 29; Coley Aff. (DE 32-7) ¶ 11-12; Pl.'s SOMF (DE 40) ¶ 18). Plaintiff instead pulled

---

[1] Exhibit B to the Howell affidavit (the video recording) was submitted on a compact disc, filed manually with the clerk of court.

away from defendant and Hudson, throwing his wrists around his body in an aggressive manner and stepping away from the holding cell.[2] (Howell Aff. Ex. B (DE 32-1) at 6:27:54-6:27:58; Coley Aff. (DE 32-7) ¶¶ 11-12).

After plaintiff stepped away from the holding cell, defendant approached plaintiff and pushed him towards the cell with one arm.[3] (Howell Aff. Ex. B (DE 32-3) at 6:27:58-6:28:01; Pl.'s SOMF (DE 40) ¶ 20). Defendant and Hudson managed to force plaintiff inside the cell. (Howell Aff. Ex. B (DE 32-3) at 6:28:00-6:28:01). Plaintiff then lunged forward out of the cell in an aggressive manner, assaulting defendant and Hudson with either his head or his hands.[4] (Id. at 6:28:01-6:28:02). Defendant and Hudson pushed plaintiff back into the holding cell. (Id.). The recording clearly depicts plaintiff lunging toward the officers and otherwise struggling with them during this period of time. (Id.).

For approximately the following eight seconds, plaintiff, defendant, and Hudson are not visible on the video recording. (Id. at 6:28:02-6:28:10). Plaintiff attests that during this time, defendant "placed his hands around my throat and began to choke me[,] and push my head into the back of the wall of the cage." (Pl.'s Aff. (DE 39-1) ¶ 7). According to plaintiff, Hudson "repeatedly [told defendant] to stop and let me go." (Id. ¶ 18). Defendant, however, did not

---

[2]    Defendant and Hudson attest that plaintiff removed his wrist restraints a second time at this point. (Coley Aff. (DE 32-7) ¶ 12; Hudson Aff. (DE 32-6) ¶ 12). Plaintiff's statement of material facts initially admits that he removed his wrist restraints, but plaintiff subsequently stated that the restraints were not removed at this time. (Compare Pl's SOMF (DE 40) ¶ 19 with id. ¶ 23). In the absence of definitive evidence from the video recording, the court adopts the version most favorable to plaintiff: that he did not remove the wrist restraints in the moments immediately preceding the use of force incident.

[3]    Defendant Coley testified he "placed" his hand on plaintiff in an attempt to gain control over him, but the court adopts plaintiff's version where it is not blatantly contradicted by the video evidence. (Compare Coley Aff. (DE 32-7) ¶ 13 with Howell Aff. Ex. B (DE 32-3) at 6:27:58-6:27:59).

[4]    Plaintiff's hands were handcuffed in front of him during the incident. (See Howell Aff. Ex. B (DE 32-3)).

cease "choking" him until Wheeler arrived and removed defendant from the holding cell.[5]   (Id.

¶ 9; Howell Aff. Ex. B (DE 32-3) at 6:28:07-6:28:10; Howell Aff. Ex. C (DE 32-4) at 3).[6]   After

the incident, plaintiff was medically screened and nursing staff noted contusions on the front of

his neck.   (Howell Aff. Ex. C. (DE 32-4) at 6; see also id. at 17 (showing slight bruising around

plaintiff's neck).   Plaintiff denied shortness of breath and refused medical care.   (Id. at 6).

## DISCUSSION

A.     Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R.

Civ. P. 56(a).   The party seeking summary judgment "bears the initial responsibility of informing

the district court of the basis for its motion, and identifying those portions of [the record] which it

believes demonstrate the absence of a genuine issue of material fact."   Celotex Corp. v. Catrett,

477 U.S. 317, 323 (1986).   Once the moving party has met its burden, the non-moving party must

then "come forward with specific facts showing that there is a genuine issue for trial."   Matsushita

Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation

omitted).

Only disputes between the parties over facts that might affect the outcome of the case

properly preclude entry of summary judgment.   See Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome

---

[5]     Defendant Coley denies "choking" plaintiff or "pushing" his head against the wall during the altercation, but admits holding him against the wall of the cage due to plaintiff's resistance.   (Coley Aff. (DE 32-7) ¶¶ 14, 16).

[6]     Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B.     Analysis

Plaintiff alleges defendants used excessive force against him in violation of the Eighth Amendment. The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" which constitutes cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312, 319 (1986).

The excessive force inquiry has an objective prong and a subjective prong. Under the objective prong, the inmate must establish that the forced used was "nontrivial." Wilkins v. Gaddy, 559 U.S. 34, 39 (2010) (per curiam). Here, defendant does not argue the use of force was nontrivial, and thus the court proceeds to the subjective component of the claim.

To satisfy the subjective prong, the inmate must show a prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991). In an excessive force case, "the 'state of mind required is wantonness in the infliction of pain.'" Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019) (quoting Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008)). The relevant inquiry for the subjective prong is whether the force was applied "in a good faith effort to maintain or restore discipline," or "maliciously" and "for the very purpose of causing harm." Whitley, 475 U.S. at 320-21; Brooks, 924 F.3d at 113. The "question is not whether a reasonable officer could have used force to maintain discipline, but whether these particular officers did use force for that reason." Brooks, 924 F.3d at 113.

In analyzing the subjective prong, the court considers four factors "from which . . . inferences may be drawn as to the officers' motives." Id. at 116. These factors are: "(1) 'the need for application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) 'any efforts made to temper the severity of a forceful response.'" Iko, 535 F.3d at 239 (quoting Whitley, 475 U.S. at 321).

Applying these factors, the court concludes defendant applied force in a good faith effort to maintain and restore discipline. The need for application of force and the perceived threat that the application of force was intended to quell clearly weigh in defendant's favor in these

circumstances. Plaintiff was behaving aggressively during the escort and he removed his wrist restraints at one point. When the parties arrived at the holding cell, plaintiff refused direct orders to enter the cell, swung his arms around in an aggressive fashion, and started walking away from the officers. Even after the initial use force in which defendant pushed plaintiff into the cell, plaintiff attempted to assault the officers by lunging toward them with either his head or his hands (which were handcuffed in front). Defendant and Hudson needed to use force to ensure their physical safety and maintain order and discipline in these circumstances. See Brooks, 924 F.3d at 113 ("[A] manifest and immediate need for the protective use of force gives rise to a powerful logical inference that officers in fact used force for just that reason."); see also Allen v. Anderson, No. 5:13-CT-3238-FL, 2018 WL 1542232, at *6 (E.D.N.C. Mar. 29, 2018), aff'd, 736 F. App'x 416 (4th Cir. 2018).

Turning to the second factor, plaintiff argues defendant pushed him with sufficient force that plaintiff's head hit the back of the wall and then "choked" him,[7] and that this use of force was not reasonably necessary where plaintiff was restrained in handcuffs and two officers were in the cell with him. Contrary to plaintiff's assertions, he presented a substantial to risk to officer safety in these circumstances. As reflected on the recording, plaintiff assaulted the officers just before the officers used force. Furthermore, the record does not contain evidence showing that plaintiff stopped resisting the officers after they were inside the holding cell. In his statement of material facts, plaintiff admits continuing to resist the officers after defendant was removed from the cell. (See Pl.'s SOMF ¶ 24); Cf. Brooks, 924 F.3d at 114 (holding genuine dispute of material fact

---

[7] As set forth above, there is a period of approximately eight seconds where defendant, Hudson, and plaintiff are inside the holding cell and not visible on the recording. The court therefore adopts plaintiff's version of these events for purposes of ruling on the instant motion.

precluded summary judgment where officer deployed pepper spray after plaintiff had clearly stopped resisting and was lying on the ground).   In sum, this was a volatile and dangerous set of circumstances requiring substantial use of force.

Plaintiff attests that Hudson "repeatedly" told defendant he had control over plaintiff, thus suggesting holding plaintiff by his neck was not necessary.[8]   While this fact supports plaintiff's argument that the use of force was not directly proportionate to the need (at least in Hudson's view), the record viewed as a whole does not permit a reasonable inference in plaintiff's favor on the second Whitley factor.    Plaintiff's actions presented a significant risk to the officers' physical safety and the orderly administration of the institution, and forced defendant to make a split-second decision to use physical force.   See Graham v. Connor, 490 U.S. 386, 396-97 (1989) (explaining that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation" and courts must take that circumstance into account when considering whether a constitutional violation occurred).

The fourth Whitley factor – whether defendant made efforts to temper the severity of the response – weighs heavily in favor of finding that defendant's actions were a good faith effort to maintain or restore discipline.   As set forth above, defendant attempted to avoid using force by giving a verbal order for plaintiff to enter the cell despite plaintiff's aggressive and unruly behavior.   Plaintiff failed to comply and began walking away from the cell.   At that point, defendant pushed plaintiff toward the cell with one arm and successfully placed plaintiff in the

---

[8]      As to plaintiff's allegation that defendant pushed his head into the wall, the court finds the second Whitley factor weighs in defendant's favor.   As discussed above, this use of force was a proportionate response to plaintiff's resistance and assaultive behavior.

cell. Plaintiff, however, then assaulted the officers, which required a significant response to ensure officer safety.

Finally, while not dispositive, the court notes that plaintiff's lack of significant injury also weighs in favor of defendant. See Wilkins, 559 U.S. at 37 ("The extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation." (internal quotations omitted)); see also Williams v. Benjamin, 77 F.3d 756, 762 (4th Cir. 1996). Here, plaintiff was medically screened after the use of force incident and he denied shortness of breath and refused further medical care. (Howell Aff. Ex. C. (DE 32-4) at 6). The record reflects that he sustained at most minor bruising on his lower neck neck. (Id. at 6; see also id. at 17).

Upon consideration of the entire record against the Whitley factors, and particularly in light of the risk to officer safety plaintiff posed in these circumstances, the court finds no reasonable jury would find defendant acted maliciously and for the very purpose of causing harm.

## CONCLUSION

Based on the foregoing, the court GRANTS defendant's motion for summary judgment, (DE 25). The clerk is DIRECTED to close this case.

SO ORDERED, this the 24th day of March, 2020.

LOUISE W. FLANAGAN
United States District Judge

10